IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00942-LTB-MJW

TERRY R. SANDMEIER,

Plaintiff(s),

v.

BYRON SADLER,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 17)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter was referred to this court pursuant to an Order of Reference to United States Magistrate Judge issued on April 26, 2012, by Judge Lewis T. Babcock. (Docket No. 11).

**PLAINTIFF'S ALLEGATIONS**

According to exhibits attached to the Complaint (Docket No. 1), the pro se plaintiff, Terry R. Sandmeier ("Sandmeier"), is a hunting guide, who in October 2006 was guiding the defendant, Byron G. Sadler, on a hunt for bighorn sheep in the Georgetown, Colorado, area. Sadler had a Colorado Governor's Auction Tag for bighorn sheep. On October 24, 2006, Sadler shot and killed a ram within a quarter mile of the center line of I-170, which is a restricted area. Both Sandmeier and Sadler initially told an incorrect story about the shooting to law enforcement.

2

In the Complaint, Sandmeier states that he is "sueing [sic] Defendant Byron Sadler for negligence, liable [sic], and slander." (Docket No. 1 at 1). Sandmeier further alleges the following in that pleading. Sadler willfully and knowingly broke Colorado state law while hunting with the plaintiff by killing a bighorn ram in a closed area and then offered law enforcement a bribe while law enforcement was deciding what charges to lodge against Sadler. Sadler's offer caused law enforcement to give Sadler a new $70,000 bighorn tag license and allow Sadler to continue to hunt. Sadler continued to hunt with Sandmeier and harvested a legal bighorn ram several days later. Sadler wrote a letter and talked to a several national publications, stating that Sadler was innocent of a crime even though Sadler's actions said different, causing public sentiment against Sandmeier. Sadler lied in an affidavit, stating that Sadler was completely innocent, that Sandmeier had told him to shoot the ram, and that Sadler had no knowledge of the closed area. Sadler subsequently recanted to the Colorado Attorney General's Office that he lacked such knowledge. The Colorado Attorney General's Office dismissed the charge that Sandmeier failed to advise Sadler of the closure laws of the area. However, Sadler's affidavit was still used to revoke plaintiff's business registration even though Sandmeier had shown that much of the statement was false and that Sadler had recanted some of his statements.

Because of Sadler's bribe offer to law enforcement, law enforcement's decision to give Sadler the new bighorn tag license and allow him to continue to hunt, and Sadler's success in getting a bighorn a few days later, law enforcement pursued Sandmeier's business registration, which was revoked, and his business was destroyed. Sadler's "action, letters, and affidavit caused Plaintiff's business registration to be taken

away and Plaintiffs careerr [sic] of 25 years and business to be lost."  (Docket No. 1 at 2).  Sadler's "writen [sic] and verbal statements against Plaintiff that were false "exhibits caused Plaintiff great mental angush [sic] and tremendous loss of income, reputation, and financial well being."  (Docket No. 1 at 5).

Plaintiff seeks $860,000 for his mental anguish, the loss of three years of income, and his loss of career, reputation, business, home.  In addition, plaintiff seeks relief for damages after 2012 if he is refused a new business registration for outfitting by the Colorado Department of Regulatory Agencies because "Plaintiff would not be able to legally guide in most of the United States ever again."  (Docket No. 1 at 6).

## DEFENDANT'S MOTION TO DISMISS

Now before the court for a report and recommendation is the defendant's Motion to Dismiss (Docket No. 17) pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff's claims for libel and slander are barred by the one-year statute of limitations under C.R.S. § 13-80-103(1)(a); and (2) the court should dismiss plaintiff's negligence claim because (a) plaintiff fails to allege facts that establish a duty of care, and (b) plaintiff's own allegations establish that his negligence claim is time-barred.  Plaintiff filed an objection to the motion (Docket No. 20) and a brief in opposition (Docket No. 19).  Defendant filed a reply (Docket No. 21), and plaintiff filed an objection thereto (Docket No. 22).  The court has considered all of these motion papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions of law, and recommendation that the defendant's motion be granted.

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based

on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1191 (quoting Iqbal, 129 S. Ct. at 1949)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction,

or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make it clear that the right sued upon has been extinguished." Zinn-Hoshijo v. Committee for Catholic Secondary Educ. In Co., 2012 WL 629061, at *2 (D. Colo. Feb. 27, 2012) (internal quotations omitted). "[O]nce a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date." Escobar v. Reid, 668 F. Supp.2d 1260, 1287 (D. Colo. 2009). Here, accepting the allegations in the Complaint as true and resolving all reasonable inferences in the plaintiff's favor, this court finds that the Complaint, together with its referenced and attached exhibits, show that all of the plaintiff's claims are barred by the applicable statutes of limitations.

A one-year statute of limitations applies to the plaintiff's libel and slander claims. § 13-80-103(1)(a), C.R.S. Plaintiff was required to bring such claims within one year of the publication of a challenged statement. See Conrad v. The Educ. Resources Instit., 652 F. Supp.2d 1172, 1186 (D. Colo. 2009). Plaintiff failed to do so here. The Complaint was filed on April 9, 2012, but the article at issue was published well over four years before in September 2007, and the defendant's affidavit that is also at issue was dated May 7, 2009, which was almost three years before this action was commenced.

More specifically, plaintiff avers in his pleading that "Defendant talked to and wrote to several National Publications stating he was inocent [sic] of crime of shooting Illegal ram, Exhibit B-1 & 2, which cause public sediment [sic] against Plaintiff." (Docket No. 1 at 3, ¶ 7). As correctly noted by the defendant, Exhibit B-1 (Docket No. 1 at 10) referred to by plaintiff is a January 25, 2010, printout of a September 2007 article by the newsletter The Hunting Report entitled "Complicated Rules Lead To Trophy Siezure [sic]." Exhibit B-2 (Docket No. 1 at 11) is a January 25, 2010, email from Kevin Hancock to the plaintiff discussing plaintiff's knowledge of and concern about the newsletter article. These exhibits referenced in and attached to the Complaint establish that the plaintiff's claims for libel and slander based on the September 2007 article are time barred.

The court notes plaintiff's argument in opposition that the article is still being republished and has not stopped doing harm to him. Plaintiff, however, has not averred in his pleading, or even in his Response, that the defendant (as opposed to The Hunting Report newsletter or any other publisher or individual) republished his statements. Plaintiff merely states in his Response that "[t]he Liable [sic]/Slander, is still being published by the Hunt Report and Used against Plaintiff to this day to hurt Plaintiffs [sic] reputation and income." (Docket No. 19 at 3, ¶ 1). Defendant correctly asserts, however, that "[i]t is only the redelivery or rereading or other repetition of the libelous statement to others **by further and voluntary act of defendant** that constitutes republication by him." Spears Free Clinic & Hosp. For Poor Children v. Maier, 261 P.2d 489, 491 (Colo. 1953) (emphasis added). "[T]o hold that the possibility or likelihood of [the statement] being read from time to time by other people would constitute

8

'continuing publication' would effectively nullify the statute of limitations." Id. at 492. Plaintiff's claims for libel and slander are barred because they were not brought within one year of the <u>defendant</u> making or publishing the alleged libelous or slanderous statement.

Plaintiff also alleges in his Complaint that "Defendant wrote an affidavit to the Co. Attorney Genral's [sic] Office stating Plaintiff told Defendant to shoot the ram and that Defendant was inocent [sic]. Exhibit's C-1 & 2." (Docket No. 1 at 3, ¶ 8).  As defendant correctly notes, however, Exhibit C-1 (Docket No. 1 at 12-13) is an affidavit he signed on May 7, 2009, and Exhibit C-2 (Docket No. 14- 19) is a motion filed on plaintiff's behalf in <u>Office of Outfitter Registration v. Sandmeier</u>, Case No. OG 2008-0003, filed in the State of Colorado Office of Administrative Courts.  The motion refers to the "Sadler Affidavit" and argues that it is untruthful.  Defendant asserts that while plaintiff did not include the signature page or certificate of service indicating when the motion was filed, it must have been submitted before the Office of Administrative Court reached its decision in that proceeding.  As noted by the defendant, an exhibit attached as page 55 of the Complaint shows the ALJ's administrative decision was made on February 23, 2010.

The Complaint in this action was filed more than three years after the defendant signed the affidavit at issue and more than two years after the State of Colorado Office of Administrative Courts reached its decision to revoke the plaintiff's outfitter registration.  Therefore, plaintiff's claims for libel and slander based upon the defendant's affidavit are barred by the statute of limitations.

A two-year statute of limitations applies to plaintiff's claim of negligence.  § 13-

9

80-102(1)(a), C.R.S. Such claim accrues "on the date both the injury and its cause are known or should have been known through the exercise of reasonable diligence." § 13-80-108(1). As noted by the defendant, plaintiff's Complaint, together with its referenced and attached exhibits, shows that the defendant killed the ram on October 24, 2006 (Docket No. 1 at 12, ¶ 12; 15, ¶ 2); the State of Colorado Office of Outfitters Registration initiated an action to revoke plaintiff's license on September 16, 2008 (Docket No. 1 at 51, ¶ 1); and ALJ Spencer ordered plaintiff's license revoked on February 23, 2010 (Docket No. 1 at 55). All of these acts took place more than two years before the filing of the Complaint on April 9, 2012.

The court notes that the plaintiff argues in his response that he did not discover his injury until April 29, 2010, when the Final Agency Order was issued by the Colorado Department of Regulatory Agency, that he also filed an appeal on that decision which was not decided and received by him until after April 9, 2001, and thus that his Complaint was filed within the two-year limit. This court finds, however, that the plaintiff's appeal of the ALJ's decision revoking plaintiff's outfitter's registration did not delay the accrual of the plaintiff's claims against the defendant. "Uncertainty as to the precise extent of damage neither precludes the filing of a suit nor delays the accrual of a claim for purposes of the statute of limitations." Broker House Intern., Ltd. v. Bendelow, 952 P.2d 860, 863 (Colo. App. 1998). "[A]n injury is different from the damages that flow from the injury. Pursuant to the language of 13-80-108(1), damages do not need to be known before accrual of a claim." Brodeur v. American Home Assur. Co., 169 P.3d 139, 147 n.8 (Colo. 2007) (citing Dove v. Delgado, 808 P.2d 1270, 1274 (Colo. 1991) (holding that the plaintiff's uncertainty as to the extent of her damages did not prevent

the filing of her complaint within the two-year limitations period where the fact of injury was known since the date of the accident). Plaintiff claims in his pleading that defendant caused him to lose his outfitter's registration and "3 years of income" and relates those losses to the ALJ's decision of February 23, 2010. Plaintiff's claim accrued when he discovered any injury caused by defendant's alleged negligence, regardless of the fact that plaintiff appealed the revocation of his license. Plaintiff's negligence claim is thus time barred.

Plaintiff has made no showing that the limitations periods should be tolled.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendant's Motion to Dismiss (Docket No. 17) be **GRANTED** and that the Complaint be dismissed with prejudice.

If the court accepts and adopts the above recommendation, then it is further

**RECOMMENDED** that the court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from such order would not be taken in good faith and therefore *in forma pauperis* status be denied for the purpose of appeal. See Coppedge v. United States, 369 U.S. 438 (1962). If such a certification is made, and the plaintiff files a notice of appeal, he would then be required to pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections**

11

**within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  July 20, 2012            s/ Michael J. Watanabe
       Denver, Colorado            Michael J. Watanabe
                                        United States Magistrate Judge